**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| DON T. CLYMER and BEATRICE C. CLYMER, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | C.A. No. 2021-0004-PWG |
| NANCY C. DeGIROLANO and JOSEPH DeGirolano, | ) ) ) | |
| Respondents. | ) ) | |

## ORDER DENYING RESPONDENTS' MOTION FOR REARGUMENT

WHEREAS[1]:

A.     This case involves an intra-family dispute over a four-acre property in Millsboro, Delaware (the "Property"). Respondent Nancy DeGirolano acquired the Property in 1975. Nancy currently resides in a house at the back of the Property. The front of the Property adjoins Long Neck Road. The other respondent, Joseph DeGirolano, is Nancy's son. Collectively, they are referred to as the "DeGirolanos" or "Respondents."

B.     In the mid-1990s, Nancy's daughter (and Joseph's sister), Petitioner Beatrice Clymer, and Beatrice's husband, Petitioner Don Clymer (together with

---

[1] Certain background facts are drawn from the court's May 27, 2021 Order Resolving Petitioners' Request for Preliminary Injunction. Dkt. 70. Due to shared last names of some individuals in this action, I will use first names when clarification is necessary. The court intends no disrespect and does not mean to suggest familiarity.

Beatrice, the "Clymers" or "Petitioners"), began to sell produce from the front of the Property (the "Area"). The Clymers have constructed a building on the Area (the "Building") and operate their produce business from the Building.

C.     The parties dispute whether the Petitioners may continue to occupy the Area to operate their produce stand. The Petitioners rely on a document dated March 1, 1997, which bears the signatures of Nancy and her late husband, Anthony DeGirolano, and purports to give the front portion of the Property to the Clymers (the "Agreement").

D.     Respondents contest the authenticity and validity of the Agreement. They also maintain that Nancy deeded the entire Property to her son (and Beatrice's brother) Joseph in August 2020.[2] Thereafter, Joseph told the Clymers that they would need to pay rent or vacate the Area. The Clymers did not vacate the Area. They instead filed a Verified Complaint in this court on January 6, 2021. The action was assigned to the Master in Chancery. On February 9, 2021, the Clymers filed a motion seeking a temporary restraining order (a "TRO"). The case was reassigned to the undersigned for the limited purpose of deciding the TRO motion. Following that reassignment, the court granted the TRO on February 17, 2021.[3] The TRO prohibited the DeGirolanos from interfering with the Clymers' produce business,

_____

[2] *See* Dkt. 1, Ex. 3.

[3] Dkt. 18.

entering the Area in any manner that disturbed the Clymers' use of the Area, or selling the Property, using the Property as collateral for any loan, or otherwise encumbering title to the Property.[4]  The Clymers posted a cash bond of $10,000.[5]

E.      The Clymers then sought a preliminary injunction.  On May 27, 2021, the court entered an Order Resolving Petitioners' Request for Preliminary Injunction,[6] which contained the court's reasoning and analysis, along with an implementing order, which granted the Clymers' motion for a preliminary injunction (the "Preliminary Injunction Order").[7]  The Preliminary Injunction Order provided, in pertinent part:

> Pending the final disposition of this action or further Order of this Court, Respondents Nancy DeGirolano and Joseph DeGirolano ("Respondents") are prohibited from:  a.  Interfering with the operation of the produce business of Don Clymer and Beatrice Clymer ("Petitioners"), located at 32861 Long Neck Road, Millsboro, Delaware ("the Property"); b.  Entering the front two acres of the Property ("the Area") in any manner that disturbs Petitioners' use of the Area.[8]

F.      On August 25, 2021, Respondents' counsel, Richard L. Abbott, Esquire, served and filed a Notice of Inspection to inspect the Area (the "Notice").[9]

---

[4] Dkt. 18.

[5] Dkt. 22.

[6] Dkt. 70.

[7] Dkt. 71.

[8] *Id.*

[9] Dkt. 78.

The Notice requested inspection nine days later on September 3, 2021. The Notice stated that Respondents "hereby request, pursuant to Court of Chancery Rule 34(a)(2), an inspection of the front 2 acres of the property at issue in this action, along with all buildings and improvements located thereon, on Friday, September 3, 2021 at approximately 1:00 p.m. Counsel for the Respondents and the Respondents shall be present to conduct the inspection."[10] At that time, there was no post-injunction order that shortened the time requirements for responding to discovery.

G. On August 26, 2021, the day after receiving the Notice, Petitioners' counsel, David J. Weidman, Esquire, informed Respondents' counsel via letter that Petitioners' counsel would be out of town on September 3, 2021 and asked Respondents' counsel to reschedule the inspection for another date.[11] Petitioners' counsel indicated he was available on Mondays through Thursdays, but that he was not available on Fridays.[12] The letter concluded: "Please provide me with a list of dates and times on a Monday through Thursday when you and your clients would like to inspect the subject property so that I can check my calendar first to make sure

---

[10] *Id.*

[11] Dkt. 81, Ex. 2.

[12] *Id.* At oral argument on the Competing Motions (defined below in Paragraph J), Petitioners' counsel stated that he was unavailable on Fridays at that time because he was traveling to Pennsylvania each Thursday evening to visit a family member who was undergoing cancer treatment.

that I am available, before the date is confirmed."[13] Respondents' counsel did not respond to Petitioners' counsel.

H. Around 1:00 p.m. on September 3, 2021, Respondents and their counsel, with cameras in tow, arrived at the Area to conduct their inspection while the produce stand was in operation. Petitioners' son, Michael Clymer, who was operating the produce stand, confronted Respondents and their counsel. Respondents' counsel insisted that he was entitled to inspect the Area in accordance with the court's rules.[14] During the inspection, Petitioner Don Clymer called Petitioners' counsel, who was out of the State at the time, to inform him about Respondents' arrival and inspection.[15] Petitioners' counsel then called Michael Clymer and asked to speak with Respondents' counsel; Respondents' counsel refused to take the phone.[16] Michael Clymer asked Respondents and their counsel to leave, but they refused to comply.[17] Respondents and their counsel recorded video and took photographs during their inspection. Both sides acknowledged that the inspection created a scene, but each side pointed blame at the other. Michael Clymer

---

[13] Dkt. 81, Ex. 2.

[14] Dkt. 83 ¶ 8.

[15] Dkt. 81 ¶ 9.

[16] Dkt. 115 at 8; Dkt. 81 ¶¶ 10, 12; Dkt. 83 ¶ 12.

[17] Dkt. 81, Affidavit of Michael Clymer ¶ 6.

submitted an affidavit stating that the Respondents' inspection interfered with his ability to conduct business from the produce stand.[18]

I.  On September 7, 2021, Petitioners filed a motion for rule to show cause why Respondents and their counsel should not be held in contempt for violating the Preliminary Injunction Order (the "Petitioners' Contempt Motion").[19]

J.  Respondents not only opposed Petitioners' Contempt Motion, but also argued that it was "so baseless" that it warranted sanctions against Petitioners and their counsel.[20] Respondents filed a separate motion for sanctions on September 8, 2021 ("Respondents' Sanctions Motion" and with Petitioners' Contempt Motion the "Competing Motions").[21]

K.  Following briefing, the court held argument on the Competing Motions on February 22, 2022 via Zoom technology.[22] The court afforded all parties an opportunity to make their arguments and call witnesses. In an oral ruling at the conclusion of the hearing, the court granted Petitioners' Contempt Motion and denied Respondents' Sanctions Motion. Specifically, the court found that the Preliminary Injunction Order was clear and that Respondents' entry onto and

---

[18] *Id.* ¶ 8.

[19] Dkt. 81.

[20] Dkt. 90 ¶ 5.

[21] Dkt. 83.

[22] Counsel for respondents was unable to connect via video, but participated via audio.

inspection of the Area without consent of Petitioners or order of this court violated the Preliminary Injunction Order.[23]

L.      The court concluded that Respondents' attempt to use a discovery request to circumvent the court's order was improper and did not excuse their violation of the Preliminary Injunction Order.  First, the Preliminary Injunction Order was clear.  Second, the general right to inspect the premises under Rule 34 does not authorize a violation of a clear order of the court.  Third, in any event, the Respondents did not comply with Rule 34.  The day after receiving the Notice, Petitioners' counsel notified Respondents' counsel that he was not available on the Respondents' selected date of the inspection—just nine days after serving the Notice.  When Petitioners' counsel asked for alternate dates, Respondents' counsel ignored the request.  Instead, Respondents and their counsel arrived at the Area unannounced on September 3, 2021.  Fourth, the court rejected Respondents' unsupported argument that Petitioners' counsel was required to seek immediate relief from the court if he did not like the date and time that Respondents had chosen for the inspection.  The court observed that Respondents' argument found no support in Court of Chancery Rule 34(b), which affords a party receiving a request for inspection 30 days to respond and object.  Instead, it was Respondents' burden to seek leave of court to obtain inspection on just nine days' notice.  *See* Ct. Ch. R.

---

[23] Dkt. 122.

7

34(b) & 37(a)(2). In short, the Respondents exercised self-help under the guise of the discovery rules to violate the Preliminary Injunction Order.[24]

M.    The court also found incredible Respondents' counsel's excuse for providing short notice for inspection and ignoring Petitioners' counsel's letter requesting alternate dates. Respondents' counsel maintained that he found it necessary to inspect the Area on the Friday before the Labor Day weekend on short notice because he was traveling from New Castle County to his beach house in Sussex County that weekend and might not return to his beach house after the Labor Day Weekend. In addition to lacking credibility, this excuse did not address why Respondents chose not to request an inspection of the Area in June, July, or earlier in August.

N.    Following the hearing on the Competing Motions, the court entered orders granting Petitioners' Contempt Motion (the "Contempt Order")[25] and denying Respondents' Sanctions Motion.[26] The Contempt Order awarded the following relief:

> 2.    No video, photographic, audio, documentary, or testimonial accounts of the September 3, 2021 entry onto the Area shall be admitted

---

[24] Though not stated in the court's oral ruling, the Petitioners established their evidentiary burden not only by a preponderance of the evidence, but also by clear and convincing evidence.

[25] Dkt. 119.

[26] Dkt. 118.

into evidence in any merits-based hearing or motion in this action or any other action;

3. Respondents shall pay the reasonable attorneys' fees and expenses of Petitioners incurred in bringing [the Petitioners'] Motion, up to a maximum of $1,000.[27]

O. On March 1, 2022, Respondents filed a motion for reargument of the Contempt Order (the "Motion").[28] Petitioners filed a response to the Motion on March 8, 2022.[29]

NOW, THEREFORE, the court having considered the Motion, IT IS HEREBY ORDERED, this 4th day of April, 2022, as follows:

1. A party seeking reargument "bears a heavy burden." *Neurvana Med., LLC v. Balt USA, LLC*, 2019 WL 5092894, at *1 (Del. Ch. Oct. 10, 2019). "A motion for reargument under Court of Chancery Rule 59(f) will be denied unless the court has overlooked a controlling decision or principle of law that would have controlling effect, or the court has misapprehended the law or the facts so that the outcome of the decision would be different." *KT4 P'rs LLC v. Palantir Techs. Inc.*, 2018 WL 2045831, at *1 (Del. Ch. May 1, 2018) (ORDER) (internal quotations omitted); *see also Laser Tone Bus. Sys., LLC v. Del. Micro-Comput. LLC*, 2020 WL 730660, at *1 (Del. Ch. Jan. 17, 2020); *Neurvana*, 2019 WL 5092894, at *1. A

---

[27] Dkt. 119.

[28] Dkt. 120 (cited as "Mot.").

[29] Dkt. 123.

9

motion for reargument "may not be used to relitigate matters already fully litigated or to present arguments or evidence that could have been presented before the court entered the order from which reargument is sought." *Standard Gen. Master Fund L.P. v. Majeske*, 2018 WL 6505987, at *1 (Del. Ch. Dec. 11, 2018). Thus, a motion for reargument that "represents a mere rehash of arguments already made . . . must be denied." *Miles, Inc. v. Cookson Am., Inc.*, 677 A.2d 505, 506 (Del. Ch. 1995) (citing *Lewis v. Aronson*, 1985 WL 21141, at *2 (Del. Ch. June 7, 1985)).

2. Under Court of Chancery Rule 70(b), this court may find a party in contempt "[f]or failure to obey a[n] . . . injunction order." Ct. Ch. R. 70(b); *see Litterst v. Zenph Sound Innovations, Inc.*, 2013 WL 5651317, at *3 (Del. Ch. Oct. 17, 2013). A party satisfies its burden by establishing contempt by a preponderance of the evidence. *In re Hurley*, 257 A.3d 1012, 1018 (Del. 2021); *inTEAM Assocs., LLC v. Heartland Payment Sys., LLC*, 2021 WL 5028364, at *11 (Del. Ch. Oct. 29, 2021). "The moving party is not required to show that the violation was willful or intentional, but the intentional or willful nature of a contemnor's acts may be considered in determining the appropriate sanction." *Litterst*, 2013 WL 5651317, at *3. This court has broad discretion to remedy violations of its orders, but the decision to impose sanctions for failure to abide by a court order must be just and reasonable. *Gallagher v. Long*, 940 A.2d 945, ¶ 6 (Del. 2007) (TABLE).

10

3.      The Motion largely rehashes Respondents' arguments that were made and rejected at the hearing on the Competing Motions. Respondents continue their attempt to elevate a discovery rule over a clear order of this court, yet offer no authority that this court overlooked to support that argument. Respondents argue that "Rule 34 contains no 30-day requirement as the [bench ruling and Contempt Order] implied."[30] This argument is without merit. First, Respondents mischaracterize the court's ruling. Respondents were subject to a clear court order preventing their entry onto the Area. No rule of discovery authorizes a party to violate a court order.

4.      The Motion merely rehashes Respondents' earlier argument that they could freely violate the Preliminary Injunction Order under the guise of a short-fuse inspection demand. The Respondents' continued justification of their clear violation of the Preliminary Injunction Order as a good faith exercise of the discovery rules is meritless. The Preliminary Injunction Order was clear. The Respondents violated it. The court pointed to Rule 34(b)'s 30-day response period merely to demonstrate the flaws in Respondents' argument that inspection on short notice was permitted unless the *Petitioners* first obtained a protective order from the court.

5.      Respondents' argument is a side-show distraction to their violation of the court's Preliminary Injunction Order. Respondents' tortured reading of Rule 34

---

[30] Mot. ¶ 7.

does not excuse that violation. According to Respondents, they were permitted to inspect the Area on any date and time of their choosing, and if the Petitioners did not agree, it was *Petitioners'* obligation to obtain a protective order. As noted at the hearing, Respondents' argument is contrary to the plain language of Rule 34. Now, as then, Respondents offer no authority to suggest the court "overlooked a controlling decision or principle of law that would have controlling effect, or the court has misapprehended the law or the facts so that the outcome of the decision would be different." *KT4 P'rs*, 2018 WL 2045831, at *1 (internal quotations omitted).

6. Rule 34(b) requires that a request for inspection "specify a reasonable time, place, and manner of making the inspection." Ct. Ch. R. 34(b). It also provides, in pertinent part:

> The party upon whom the request is served shall serve a written response within 30 days after the service of the request . . . . The Court may allow a shorter or longer time. . . . The party submitting the request may move for an order under Rule 37(a) with respect to any objection to or other failure to respond to the request . . . or any failure to permit inspection as requested.

*Id.* Respondents attempt to justify their violation of the Preliminary Injunction Order by reading much of this language out of the Rule.

7. In this case, Respondents served the Notice on August 25, 2021 to inspect the Area nine days later on September 3, 2021. It expressly stated it was a

"request" to inspect the Area.[31]  The day after receiving the request, Petitioners' counsel informed Respondents' counsel that he was not available on September 3, 2021 and that the parties needed to discuss another date.  Respondents' counsel never responded and, instead, showed up for the inspection on September 3.  As stated in Rule 34(b), if the recipient of a notice of inspection objects, the party serving the request may move for an order under Rule 37.  Even if, as Respondents insist, the August 26, 2021 letter from Petitioners' counsel did not constitute an objection under the Rule, Petitioners had another 29 days to lodge their objection.  If the Respondents wanted to inspect the Area on less than 30-days' notice, the Rule directs that the burden is on the Respondents to seek leave of court.

8.      Respondents' failure to supply any legal authority to support its flawed construction is not surprising.  It is contrary to a plain reading of the Rule, as courts applying the federal counterpart to Court of Chancery Rule 34 have found.  In *Mallak v. Aitkin County*, 2016 WL 8607391 (D. Minn. June 30, 2016), *aff'd*, 2016 WL 8607392 (D. Minn. Sept. 29, 2016), the court addressed this exact issue:

> The text of Rule 34 is silent with regard to the timing of notices for inspection but it explicitly establishes as part of the rule that a party who has received a notice of a Rule 34 inspection will have thirty (30) days in which to respond to the notice.  Fed. R. Civ. P. 34(b)(2)(A).  The text of Rule 34 also explicitly lists the exceptions to that rule, that is to say, the manner in which the thirty (30) day period may be shortened, *i.e.*, only by stipulation of the parties or by order of the court.  Fed. R. Civ. P. 34(b)(2)(A).  To read Rule 34 as allowing the party

---

[31] Dkt. 78.

serving a notice of inspection to unilaterally shorten the time for requiring the party receiving the notice to respond, as Plaintiff now urges the Court to do, would render the foregoing sections of Rule 34 mere surplusage.

*Id.* at *11; *accord Luer v. Cty. of St. Louis Mo.*, 2018 WL 2734986, at *2 (E.D. Mo. June 7, 2018); *see also Holliday v. Extex*, 237 F.R.D. 425, 427 (D. Haw. 2006) (stating a motion to compel for failure to permit inspection would fail because movant did not allow the plaintiff 30 days to respond to the request and did not propose a reasonable time, place, or manner for the inspection); *Doyle v. Hoyle*, 1995 WL 113933, at *7 (D. N.H. Mar. 14, 1995) (noting that motion to compel inspection was premature because it was filed prior to the 30 days provided for response under Fed. R. Civ. P. 34(b)). These authorities are persuasive in applying the parallel rules of this court. *Mann v. Oppenheimer & Co.*, 517 A.2d 1056, 1061 (Del. 1986); *Dawson v. Pittco Cap. P'rs, L.P.*, 2010 WL 692385, at *1 n.3 (Del. Ch. Feb. 15, 2010) ("Federal Court decisions are 'of great persuasive weight in the construction of parallel Delaware rules' due to the analogous nature of the Court of Chancery Rules and the Federal Rules of Civil Procedure." (quoting *Cede & Co. v. Technicolor, Inc.*, 542 A.2d 1182, 1191 n.11 (Del. 1988))).

9. According to Respondents, they merely needed to serve an inspection notice selecting the date and time of their choosing, ignore the prompt response of opposing counsel that Respondents' date and time was inconvenient, and show up unannounced to disturb the Petitioners' use of the Area. That rationalization is

contrary to the Rules of this court, antithetical to the traditions and expectations of the Delaware Bar, and an invitation to sharp practice.

10. Respondents' remaining arguments are makeweight. The court's bench ruling and Contempt Order do not "constitute *ex post facto* decisions which violate the 'Fair Warning' requirements of Constitutional Due Process."[32] The Contempt Order addressed Respondents' clear violation of an existing Preliminary Injunction Order. There was nothing retroactive about the Preliminary Injunction Order. Thus, Respondents' reliance on *Triumph Mortgage Corp. v. Mergenthaler*, No. 621, 2018, slip op. at 13 (Del. Oct. 24, 2019), is inapplicable. *See id.*, slip op. at 12 (remanding to the Superior Court for a determination as to whether an interim decision of the Supreme Court should apply retroactively).

11. Respondents' counsel insists his "intent was pure, not based on any intent to do anything untoward."[33] Respondents, again, miss the point. Respondents and their counsel intended to enter onto the Area on September 3, 2021, and their conduct interfered with the operation of the produce business and disturbed Petitioners' use of the Area. That conduct violated the Preliminary Injunction Order. "It is no defense to an action for civil contempt that the party subject to the order had no intention to violate that order." *Dep't of Servs. for Children Youth and Their*

---

[32] Mot. ¶ 13.

[33] *Id.* ¶ 10.

*Families v. Cedars Acad.*, 1989 WL 134868, at *2 (Del. Ch. Oct. 30, 1989); *see Litterst*, 2013 WL 5651317, at *3 ("The moving party is not required to show that the violation was willful or intentional . . . .").

12. Respondents argue "there is . . . no legal authority under the circumstances to impose a fee award."[34] This, too, is another meritless argument. An award of fees "can be imposed as a contempt sanction." *Kurz v. Holbrook*, 2010 WL 3028003, at *1 (Del. Ch. July, 29, 2010); *see Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, 2010 WL 338219, at *29–30 (Del. Ch. Jan. 29, 2010) (awarding counsel fees after finding defendant in contempt for violating a preliminary injunction).

13. The remaining arguments in the Motion merely rehash arguments that were made at the hearing, considered by the court, and rejected. Those arguments cannot serve as the basis for reargument.

14. Accordingly, the motion for reargument is **DENIED**.

*/s/ Paul A. Fioravanti, Jr.*
Vice Chancellor

---

[34] *Id.* ¶ 24.

16